**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **ANTHONY BEAN,** | * | |
| **Petitioner,** | * | |
| v. | * | **Civil No. DLB-19-2550** |
| **STATE OF MARYLAND,** | * | |
| **Respondent.** | * | |

**MEMORANDUM OPINION**

Anthony Bean filed a timely petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  ECF 1.  The Attorney General of Maryland filed an answer to the petition asserting it must be dismissed as meritless.  ECF 6.  No hearing is necessary.  *See* Rule 8(a), *Rules Governing § 2254 Cases in the U.S. Dist. Cts.*; Loc. R. 105.6 (D. Md. 2021); 28 U.S.C. § 2254(e)(2)).  For the following reasons, Bean's petition is denied.  A certificate of appealability shall not issue.

**I.      Background**

On March 22, 2017, Bean was convicted in the Circuit Court for Baltimore City for more than two-dozen counts associated with a March 2016 carjacking, for which he was later sentenced to fifteen years' imprisonment.  ECF 1, at 2.  The Court of Special Appeals of Maryland affirmed Bean's conviction in a published opinion issued on March 28, 2019.  *Id.* at 3; *Bean v. State*, 205 A.3d 26 (Md. Ct. Spec. App. 2019).  Bean filed a petition for certiorari in the Court of Appeals of Maryland, which the Court of Appeals denied on July 26, 2019.  ECF 1, at 3–4; *Bean v. State*, 212 A.3d 398 (Md. July 26, 2019) (unpublished table).  Bean did not file a petition for state post-conviction relief.  ECF 1, at 4–6.

Before his trial, Bean moved to suppress the victim's pretrial photo identification of him. *Bean*, 205 A.3d at 28.  The Circuit Court considered the motion at a suppression hearing.[1]  The victim, Jennifer Perry, testified at the hearing that around 10:00 p.m. on March 22, 2016, three men approached her after she parked her car.  One of the men held back while the other two continued to approach.  Perry described the "main robber" as "taller, bulkier, kind of chubby around mid-face[,]" with a somewhat shaved face, and wearing a black hoodie.  The other man who continued to approach her was "average height [and] skinny[,]" but Perry could provide no other details because this person wore a mask and did not speak during the robbery.  The main robber threatened to "blow [Perry's] brains out" and demanded that she surrender her car and other belongings.  Perry handed over her car keys and belongings.  The assailants scattered when another car came down the road, and Perry ran to her house and called the police.

Later that night, Perry discovered while cancelling her credit cards that one had just been used at a local 7-Eleven.  She notified the police the following morning, and detectives, including Detective William Bailey, visited the 7-Eleven.  The detectives retrieved the stolen credit card, which had been left in the store, as well as a receipt detailing the transaction.  Using the time from the receipt, Det. Bailey obtained surveillance footage depicting three individuals, two men and a woman, entering the store and making the purchase.  Det. Bailey took still-frames of the three individuals and created a "be on the lookout" flyer ("BOLO").  The BOLO also included a photo of Perry's stolen vehicle, details about the carjacking, and instructions that the BOLO was "**FOR OFFICIAL USE ONLY / LAW ENCORCEMENT SENSITIVE**."  Det. Bailey testified he sent the BOLO to other police department districts, and that he intended for the BOLO to remain

---

[1] These facts are abridged from the Court of Special Appeals' opinion affirming Bean's conviction. *Bean*, 205 A.3d at 29–33.

internal.  However, the public relations office of the Baltimore City Police Department uploaded the BOLO onto several social medial platforms, including Facebook.  Detective Bailey testified that he had no influence over the decision to place the BOLO on social media.

That afternoon, Perry's brother saw the BOLO on Facebook and sent to it her.  Perry recognized one of the individuals.  Around 5:00 p.m., Det. Bailey called Perry to report that police had located her vehicle.  Perry told Det. Bailey she had seen the BOLO on social media and had recognized one of the robbers.  Det. Bailey, surprised, arranged for Perry to come to the police station the following day for an interview.  The morning before Perry's interview, officers on patrol stopped a woman wearing the same dress as the woman from the surveillance footage. When questioned, the woman identified the two men who were with her in the footage, one of whom was Bean.

Perry arrived for her interview.  Det. Bailey testified he did not show Perry a photo array because she had already seen the BOLO.  Instead, Det. Bailey showed Perry the BOLO, and she signed the photos of both men to indicate she recognized them as the main robber and the lookout. Det. Bailey then showed Perry Maryland Vehicle Administration ("MVA") photos of Bean and the other man identified by the woman earlier that morning.  Det. Bailey explained that he used single photos instead of a photo array because it was clear Perry "[knew] the people's faces already."  Perry wrote a description for each man after viewing the MVA photos.  After Perry viewed Bean's photo, she wrote:

> I recognize this man who robbed me at gunpoint.  He pointed a gun at me and demanded I show them where my car was.  He stated he would blow my brains out if I didn't show them where my car was.  I recognize [him] based on his stockier, full face, darker complexion, dark eyes, and full lips.  He also had a shaved head with fine black hair.  I also recognize this man from the social media ad on the police flyer.

Perry read this statement at the suppression hearing.

3

Following Perry's testimony, defense counsel argued the procedure was impermissibly suggestive and the underlying identification was not reliable.  Defense counsel contended the timing was problematic because Perry viewed the BOLO before she identified Bean, and the BOLO strongly suggested the two men were associated with the carjacking.  The Circuit Court denied Bean's motion to suppress the identification.  *Bean*, 205 A.3d at 32.  Bean went to trial and was convicted.  *Id.*

Bean filed a petition for a writ of habeas corpus in this Court on August 28, 2019.  ECF 1, at 16 (date of Bean's signature).  He claims that Perry's pretrial identification of him was impermissibly suggestive and violated his due process rights.  *Id.* at 6–11.[2]

## II.     Standard of Review

For habeas petitioners in custody pursuant to the judgment of a state court, relief is available "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); *see also Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (per curiam); *Barnes v. Joyner*, 751 F.3d 229, 238 (4th Cir. 2014).  "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions." *Larry v. Branker*, 552 F.3d 356, 368 (4th Cir. 2009).

---

[2] Bean articulates his claim over four separate counts: (1) The lower court correctly concluded that the witness identification of Bean was the product of impermissibly suggestive police procedures; (2) The lower court incorrectly found Perry's identification of Bean to be otherwise reliable; (3) The trial court erred in denying Bean's motion to suppress the complainant's extra-judicial identification and it cannot be deemed harmless; and (4) This court must reverse Bean's conviction because the witness's unreliable identification of Anthony Bean was tainted by impermissibly suggestive police procedures.  ECF 1.  For clarity and because the four counts assert the same due process issue, the Court regards Bean's petition as stating a single claim based on a denial of his due process rights because of an impermissibly suggestive identification.  The unified analysis fully addresses Bean's petition.

When a state court previously has ruled on the merits of a petitioner's federal claim, this Court's review is highly deferential. Pursuant to § 2254(d) of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), "a petitioner is entitled to relief only if the state court adjudication of their claim was [1] 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court'; or [2] 'based on an unreasonable determination of the facts in light of the evidence presented.'" *Allen v. Stephan*, 42 F.4th 223, 246 (4th Cir. 2022) (quoting 28 U.S.C. § 2254(d)). "The role of a federal habeas court is to guard against extreme malfunctions in the state criminal justice systems, not to apply *de novo* review of factual findings and to substitute its own opinions for the determinations made on the scene by the trial judge." *Davis v. Ayala*, 576 U.S. 257, 276 (2015) (internal quotation marks and citations omitted).

"[C]learly established Federal law" for purposes of § 2254(d)(1) includes only "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Williams v. Taylor*, 529 U.S. 362, 365 (2000)). "A state court's decision is 'contrary to' clearly established federal law under § 2254(d)(1) when it 'arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law' or 'decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts.'" *Allen*, 42 F.4th at 246 (quoting *Williams*, 529 U.S. at 412–13). A state court's decision is an "unreasonable application" of clearly established federal law if the state court correctly identified the governing legal principle but "'unreasonably applie[d] that principle to the facts of the prisoner's case.'" *Id.* (quoting *Williams*, 529 U.S. at 413). This standard is meant to be "difficult to meet." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). "'[T]he ruling must be objectively unreasonable, not merely wrong; even clear error will not suffice.'" *Allen*, 42 F.4th at 246 (quoting *Virginia v. LeBlanc*, 137

S. Ct. 1726, 1728 (2017) (per curiam)).  The petitioner "'must show that the state court's ruling was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'"  *Id.* (quoting *LeBlanc*, 137 S. Ct. at 1728).

A state court's factual determinations, meanwhile, "are presumed correct, and the petitioner must rebut this presumption by clear and convincing evidence."  *Id.* (citing 28 U.S.C. § 2254(e)(1).  A state court's decision is based on an "unreasonable determination of the facts in light of the evidence presented" under § 2254(d)(2) when it is "'sufficiently against the weight of the evidence that it is objectively unreasonable.'"  *Id.* (quoting *Winston v. Kelly*, 592 F.3d 535, 554 (4th Cir. 2010)).  "[E]ven if '[r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede the trial court's . . . determination.'"  *Wood v. Allen*, 558 U.S. 290, 301 (2010) (quoting *Rice v. Collins*, 546 U.S. 333, 341–42 (2006)).  "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part."  *Sharpe v. Bell,* 593 F.3d 372, 378 (4th Cir. 2010). This is "especially so" when the state court "resolved issues like witness credibility," and credibility judgments may only be overturned when the error is "'stark and clear.'"  *Id.* (quoting *Cagle v. Branker*, 520 F.3d 320, 324–25 (4th Cir. 2008)).

Even if a petitioner meets his burden under § 2254(d) and establishes the state court erred, "habeas relief will not be granted unless the error had substantial and injurious effect or influence in determining the jury's verdict" or there is at least "grave doubt as to the harmlessness" of the error.  *Allen*, 42 F.4th at 246–47 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993), and

*Fullwood v. Lee*, 290 F.3d 663, 679 (4th Cir. 2002)) (internal quotation marks omitted).  In short, AEDPA requires this Court to uphold the judgment of a state court except in extremely rare cases.

## III.    Analysis

"In assessing a petitioner's habeas claims," the Court looks to "'the last reasoned decision of a state court addressing the claim.'"  *Id.* at 247 (quoting *Woodfolk v. Maynard*, 857 F.3d 531, 544 (4th Cir. 2017)).  The substance of Bean's claim was last addressed by the Maryland Court of Special Appeals on direct appeal.  *Bean*, 205 A.3d 26.  Bean argued then, as he argues now, that Perry's pretrial identification should have been suppressed because it resulted from an impermissibly suggestive procedure in violation of his right to due process of law guaranteed by the Fourteenth Amendment to the United States Constitution.

"Due process principles prohibit the admission at trial of an out-of-court identification obtained through procedures so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification."  *U.S. v. Saint Louis*, 889 F.3d 145, 152 (4th Cir. 2018) (citing *Neil v. Biggers*, 409 U.S. 188, 198 (1972)).  But "the Due Process Clause does not require a preliminary judicial inquiry into the reliability of an eyewitness identification when the identification was not procured under unnecessarily suggestive circumstances arranged by law enforcement."  *Perry v. N.H.*, 565 U.S. 228, 248 (2012).  And even when a preliminary inquiry is appropriate, due process does not require the exclusion of evidence unless the totality of the circumstances indicate "improper police conduct created a 'substantial likelihood of misidentification.'"  *Saint Louis*, 889 F.3d at 152 (quoting *Biggers*, 409 U.S. at 201).  If indicators of the reliability of the identification outweigh "'the corrupting effect' of law enforcement suggestion," the evidence "should be submitted to the jury."  *Id.* (quoting *Manson v. Brathwaite*, 432 U.S. 98, 116 (1977)).

Following the hearing on Bean's motion to suppress Perry's identification, the Circuit Court made three rulings. First, it ruled that the release of the BOLO constituted state action because it was prepared by the Baltimore City Police Department. *Bean*, 205 A.3d at 32. Second, it ruled that the BOLO was impermissibly suggestive because it "is basically saying, 'This is the individual, or these are the individuals that we believe were responsible for this.'" *Id.* However, the Circuit Court ruled that the factors enumerated in *Biggers* weighed in favor of the identification's reliability, and it ultimately denied Bean's motion to suppress. *Id.*

The Court of Special Appeals affirmed the Circuit Court's decision not to suppress the identification on different grounds. Relying on *Perry,* the Court of Special Appeals held that a full due process inquiry was unnecessary because Bean failed to demonstrate improper police conduct. "The Supreme Court in *Perry* underscored the principle that the Due Process Clause protected against suggestive identifications only when law enforcement *arranged* the circumstances of the witness's identification." *Id.* at 34. The Court of Special Appeals held that the Baltimore City Police Department did not arrange the victim's identification of Bean and, therefore, there was no state action to trigger the Due Process Clause. *Id*. at 28, 34–36. Specifically, the Court of Special Appeals cited numerous cases from other jurisdictions and stated

> These cases make clear that courts will not conclude that "improper police conduct" influenced a witness's out of court identification when police merely release a photograph of the defendant to the media as part of an on-going investigation. That police in this case released Bean's photograph on social media rather than a legacy media outlet is a distinction without a difference as it relates to the propriety of the state action. The release of the BOLO on social media in this case was not "improper police conduct" that triggers a [due process] analysis because police did not "arrange or encourage" Ms. Perry to view the BOLO; nor was there any evidence that the police directed the BOLO toward Ms. Perry in any sort of targeted manner. In fact, Det. Bailey, the lead investigator in this case, testified that he was surprised that Ms. Perry saw the BOLO and volunteered that she had identified the men it depicted. Moreover, to the extent the identification was arranged, it was arranged by Perry's brother, not the police department. With no evidence that police *arranged* for Ms. Perry to view the BOLO, which was extremely suggestive,

the Due Process Clause is not implicated.

*Id.* at 35 (internal citations omitted).

The Court of Special Appeals' analysis relied upon the seminal United States Supreme Court case on state action associated with impermissibly suggestive identifications.  In *Perry*, the Supreme Court held "[t]he due process check for reliability . . . comes into play only after the defendant establishes improper police conduct."  565 U.S. at 241.  The Supreme Court reaffirmed that it had "not extended pretrial screening for reliability [of an identification] to cases in which the suggestive circumstances were not arranged by law enforcement officers."  *Id.* at 232.  In explaining its holding, the Supreme Court noted its decisions in this area have "turn[ed] on the presence of state action and aim[ed] to deter police from rigging identification procedures."  *Id.* at 233.  "When no improper law enforcement activity is involved," reliability is better tested with tools such as "the presence of counsel at post-indictment lineups, vigorous cross-examination, protective rules of evidence, and jury instructions on both the fallibility of eyewitness identification and the requirement that guilt be proved beyond a reasonable doubt."  *Id.*

Bean argues the Court of Special Appeals erred by finding the release of the BOLO by the Baltimore City Police Department was not improper police conduct.[3]  ECF 1, at 6.  Essentially, he argues Perry's initial identification of the two men pictured in the BOLO as two of the robbers was "arranged by" police, and thus state action, because the Det. Bailey crafted the BOLO and the Baltimore City Police Department published it onto Facebook.  However, the Court of Special Appeals' decision is not contrary to *Perry*, which held a witness's spontaneous identification of the defendant, who happened to be standing outside her window during her interview with police, was not arranged by law enforcement.  *Perry*, 565 U.S. at 234.  Bean does not identify any other

---

[3] Bean does not take issue with any of the state courts' factual findings.

Supreme Court precedent that the Court of Special Appeals' opinion is contrary to, and the Court is aware of none.

Nor is the Court of Special Appeals' opinion an unreasonable application of *Perry*. *Perry* made clear that "[a] primary aim of excluding identification evidence obtained under unnecessarily suggestive circumstances . . . is to deter law enforcement use of improper lineups, showups, and photo arrays in the first place[,]" and that the "deterrence rationale is inapposite in cases . . . in which the police engaged in no improper conduct." *Id.* at 241; *see also id.* at 242–43 (referring to the "crucial element of police overreaching," the "risk of police rigging," and the "prevention of unfair police practices"). The Court of Special Appeals concluded the Baltimore City Police Department did not engage in "improper police conduct" because it did not "arrange or encourage" Perry to view the BOLO; rather, her brother did. *Bean*, 205 A.3d at 35. This conclusion aligns with numerous other cases from across the country considering similar situations, *see id.* at 34–36, and with language in *Perry* that arguably suggested a witness identification "after seeing a photograph of the defendant in the press captioned 'theft suspect'" would not implicate due process, 565 U.S. at 244. In such circumstances, even if the state court erred, it cannot be said to have erred "beyond any possibility for fairminded disagreement.'" *See Allen*, 42 F.4th at 246 (quoting *LeBlanc*, 137 S. Ct. at 1728).

The Court does not reach Bean's arguments that Perry's identification was unreliable or that the BOLO was impermissibly suggestive because, under AEDPA's deferential standard of review, the Court of Special Appeals' decision rejecting Bean's claim at the "state action" threshold was neither contrary to nor an unreasonable application of *Perry* or other clearly established federal law.

**IV.     Certificate of Appealability**

The accompanying Order is a final order adverse to Bean.  Thus, the Court must issue or deny a certificate of appealability.  Rule 11(a), *Rules Governing Section 2254 Cases in the U.S. Dist. Cts.*  Bean must receive a certificate of appealability before an appeal may proceed.  28 U.S.C. § 2253(c)(1).

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When a district court rejects a habeas petition on the merits, as here, a petitioner may satisfy this standard only by demonstrating that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Bean has failed to demonstrate that a certificate of appealability should issue.  He still may request that the United States Court of Appeals for the Fourth Circuit issue such a certificate.  *See* Fed. R. App. P. 22(b).

**V.     Conclusion**

Bean's habeas petition, ECF 1, is denied.  The Court declines to issue a certificate of appealability.  A separate order follows.


DATED this 6th day of September, 2022.


_____
Deborah L. Boardman
United States District Judge